UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Michael Leon Tyner, | |
| Plaintiff, | Case No. 19 C 1502 |
| v. | |
| Bonnie Nowakowski, Brij Mohan, R.A. Heisner, Richard Walenda, and Rachel Nelson, | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Leon Tyner sues under *Bivens v. Six Unknown Named Agents of Fed'l Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that Defendants Bonnie Nowakowski, Brij Mohan, R.H. Heisner, Richard Walenda, Rachel Nelson, and unknown medical personnel violated his Fourth, Eighth, and Fourteenth Amendment rights by failing to provide him with necessary medication and medical attention when he was a pretrial detainee in their care and failing to alert any medical care provider of Plaintiff's need for medication and medical attention. [59] at ¶¶ 45–46, 49–51. Plaintiff also alleges that Defendant Heisner (as Warden of the Metropolitan Correctional Center (MCC)) maintained a policy or procedure at the MCC of routinely denying inmates access to proper or sufficient medication and medical care. *Id.* at ¶¶ 52–65. Finally, Plaintiff alleges that Defendant Richard Walenda, an employee of the U.S. Marshal's Service, violated these same rights by ignoring Plaintiff's pleas for help and medication and discussing Plaintiff's illnesses in front of other prisoners.

*Id.* at ¶ 12. Defendants Nowakowski, Mohan, and Heisner move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), [64], as does Defendant Walenda, [66]. For the reasons explained below, this Court grants Walenda's motion [66], and grants the other Defendants' motion as to Heisner. As to Defendants Nowakowski and Mohan, the Court converts the motion to dismiss to a motion for summary judgment.

I.  **Background**[1]

Plaintiff, an Illinois citizen, was previously held awaiting trial at the Jerome Combs Detention Center (JCDC) and the MCC. [59] at ¶¶ 3, 7–9. At all times relevant, Defendant Walenda worked for the U.S. Marshal's Service. *Id.* at ¶ 12. Defendant Nowakowski served as the staff physician at the MCC and Defendant Mohan served as the clinical director of the MCC; both maintained responsibility for the medical care of detainees at MCC. *Id.* at ¶ 11. Defendant Heisner served as the Warden of the MCC. *Id.* at ¶ 13.[2]

According to Plaintiff, when he was first incarcerated he suffered from HIV, herpes, post-colorectal cancer symptoms, and an active syphilis infection of which he was unaware at the time. *Id.* at ¶ 15. He learned of his syphilis infection from Dr. Martin Phillips while incarcerated at JCDC. *Id.* at ¶¶ 6, 21, 25.

On March 12, 2018, while incarcerated at the JCDC, Plaintiff's wife delivered a letter to the court seeking an order for medical treatment for Plaintiff. *Id.* at ¶ 16.

---

[1] This Court takes the following facts from Plaintiff's Second Amended Complaint [59].

[2] Defendant Nelson, a nurse at the JCDC, did not move to dismiss, and the Court therefore will not discuss the allegations against her in this decision.

Shortly thereafter, Defendant Walenda questioned Plaintiff about the letter while he was being held in a bullpen at the federal courthouse. *Id.* at ¶ 17. Plaintiff spit on the ground to show Defendant Walenda that he was coughing up blood. *Id.* Defendant Walenda told Plaintiff that the JCDC had sent a request to the wrong pharmacy and said that Plaintiff would not be able to afford the medication if he was not incarcerated. *Id.* Defendant Walenda made these statements in front of other inmates. *Id.* He then placed Plaintiff in a separate cell, away from other inmates. *Id.* Plaintiff alleges that several inmates reported that Defendant Walenda had told them that Plaintiff had an infectious disease. *Id.* at ¶ 18.

Plaintiff was transferred from the JCDC to the MCC on August 28, 2018. *Id.* at ¶ 24. His transfer documents, prepared and signed by Nurse Rachel Nelson, did not mention Plaintiff's active syphilis infection. *Id.* at ¶ 25.

Following his transfer to the MCC, Plaintiff told Defendant Nowakowski that he needed treatment for his syphilis infection, but she told him that there was no report of a syphilis infection in his transfer file. *Id.* at ¶ 26. Rather than contacting JCDC or Dr. Phillips to confirm the diagnosis, Defendant Nowakowski referred Plaintiff to an infectious disease specialist. *Id.* at ¶¶ 27, 29. While awaiting his visit with the new infectious disease specialist, Plaintiff sent messages to Nowakowski and Mohan that went unanswered. *Id.* at ¶ 30. Plaintiff also signed up for a "sick-call," during which the MCC staff nurse provided medication for his herpes but not his syphilis infection. *Id.* at ¶ 31. He also received a blood test sometime around October 15, 2018. *Id.* at ¶ 32. Defendants Nowakowski and Mohan refused to provide

3

treatment or discuss the results of Plaintiff's blood test for the two weeks leading up to his visit with the infectious diseases specialist. *Id.* at ¶ 33.

About two months after his transfer, on or about October 30, 2018, Plaintiff saw infectious disease specialist Dr. Sein Yeo who ordered treatment for Plaintiff's ailments, including a weekly injection that caused him to bleed through his clothes. *Id.* at ¶¶ 33–35. Plaintiff, understandably concerned about the effectiveness of the treatment, requested and received re-testing for syphilis, after which Defendant Mohan informed him that the infection had dissipated and was no longer active. *Id.* at ¶ 36. Plaintiff saw Dr. Yeo a second time in January of 2019, at which point Dr. Yeo recorded "a spike in his HIV viral load" and both an active herpes outbreak and little progress in the treatment of his syphilis. *Id.* at ¶ 37. Although Dr. Yeo advised the MCC that Plaintiff should be admitted to the hospital for emergency treatment, he was not admitted until about a month later, on February 8, 2019. *Id.* at ¶¶ 37, 38. Plaintiff remained in the hospital for nine days. *Id.*

Upon his return to the MCC, Plaintiff was denied access to his medication for two more days because the pharmacy was closed until the property officer returned two days later. *Id.* at ¶¶ 39, 40. Because of these lapses in medication and treatment, Plaintiff alleges, his body grew resistant to one form of HIV medication, and he is now limited in what drugs he can take to treat his HIV. *Id.* at ¶ 40.

Plaintiff asked for redress through the administrative process at the MCC. *Id.* at ¶ 42. He claims he exhausted his administrative remedies, but because Defendant Heisner deliberately omitted placing his response to Plaintiff's formal complaint on

4

the Bureau of Prisons letterhead (a procedural requirement), the regional administrator rejected it. *Id.* at ¶¶ 42, 43. Plaintiff again attempted to resend the letter to the regional administrator, but the regional administrator rejected it again due to the lack of letterhead on Defendant Heisner's response. *Id.* at ¶ 43.

Plaintiff then filed this lawsuit on March 1, 2019. [1]. Plaintiff's first attorney filed his first amended complaint on October 30, 2019. [15]. Defendants Nowakowski, Mohan, and Heisner moved to dismiss or for summary judgment, [50], and this Court gave Plaintiff an opportunity to amend his complaint in response; his new counsel did so. [59]. Defendant Walenda now moves to dismiss the claims against him for failure to state a claim. [66]. Defendants Nowakowski, Mohan, and Heisner also move to dismiss for failure to state a claim or, in the alternative, for summary judgment. [64]. Plaintiff responded to these motions, [70], [71], and Defendants filed reply briefs in support of their motions, [74], [75].

## II. Legal Standard

To survive a 12(b)(6) motion, a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so that the Defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief, allowing this Court to "draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility

standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Thus, "threadbare recitals of the elements of a cause of action" and mere conclusory statements "do not suffice." *Iqbal*, 556 U.S. at 678.

In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Id*. But this Court does not accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

When, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the Court, the Court must treat the motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). And if the Court converts the motion, it must provide all parties a reasonable opportunity to present all material pertinent to the summary judgment motion. *Id*.

### III. Analysis

In his Second Amended Complaint, Plaintiff alleges Fourth, Eighth, and Fourteenth Amendment violations.[3] [59] at ¶ 49. Defendant Walenda and the Bureau of Prisons Defendants (Nowakowski, Mohan, and Heisner) separately move to dismiss Plaintiffs' claims against them in their entirety, [66], [64]. The BOP Defendants move in the alternative for summary judgment, [64]. To this end, the

---

[3] Although Plaintiff alleges violations of his Fourth, Eighth, and Fourteenth Amendment rights under § 1983, due to his status as a pre-trial detainee in a federal detention center, this Court construes his claim as a *Bivens* action for violations of his rights under the Fifth Amendment Due Process clause. *Bivens*, 403 U.S. 388; *Bell v. Wolfish*, 441 U.S. 520, 530, 535 n.17 (1979); *Cunningham v. Wilson*, 326 F. App'x 948, 949 (7th Cir. 2009) (noting that "a federal pretrial detainee must use the Fifth Amendment's Due Process Clause" to bring a conditions of confinement claim); *Daniels v. Janca*, No. 17 C 906, 2019 WL 2772525, at *4 (N.D. Ill. July 2, 2019).

BOP Defendants submitted a Local Rule 56.1 Statement of Material Fact, to which Plaintiff has replied. [65], [71-1]. They have also submitted exhibits for the Court's consideration, including a Statement from Warden Heisner's Secretary, copies of some of the administrative forms submitted by and responding to the Plaintiff's grievances, computer readouts showing when Heisner's office received Plaintiff's grievances and why his office rejected them, an overview of the administrative procedures required by the Federal Bureau of Prisons Administrative Remedy Program, and highlighted copies of both of Plaintiff's Amended Complaints. *See generally* [65-1], Ex. A–K. Based upon the parties' submissions, and for the reasons discussed below, this Court grants the motions to dismiss as to Defendants Walenda and Heisner but declines to dismiss Plaintiff's claims against Defendants Nowakowski and Mohan. Instead, the Court converts these Defendants' motion to a motion for summary judgment under Rule 56 on the issue of exhaustion and allows limited discovery and briefing on the issue of whether Plaintiff exhausted all available remedies.

### A. Claims against Defendant Walenda

With regard to Defendant Walenda, Plaintiff alleges that Walenda ignored his pleas "for treatment and for access to [his] medication" while Plaintiff was being held in a courthouse cell. [59] at ¶ 12. Walenda allegedly told Plaintiff to "tell your idiot wife to stop sending letters about HIV meds" and told Plaintiff "the JCDC had sent a request to the wrong pharmacy," that the HIV medication cost several thousand dollars, and that Plaintiff could not afford the medication if he was not locked up. *Id.*

7

at ¶ 17. Plaintiff also alleges that Walenda, "on at least one occasion, locked [Plaintiff] in a cage and told other prisoners about [Plaintiff's] illness" and placed Plaintiff "in a separate cage apart from other inmates." *Id.* at ¶¶ 12, 17. Although crass, Walenda's alleged conduct does not rise to the level of a constitutional violation under the Fifth Amendment.[4]

No *Bivens* liability attaches to a federal official unless he has direct, personal involvement in the violation. *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011). In addition, non-medical professionals like Walenda can generally rely upon the expertise of medical professionals charged with Plaintiff's care. *Id.*; *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (explaining that if prisoner is under the care of medical experts, a non-medical prison official will be justified in believing that the prisoner is in capable hands). While non-medical professionals cannot "simply ignore an inmate's plight," a plaintiff must show "the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an excessive risk to inmate health or safety." *Arnett,* 658 F.3d at 755–56 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Once an official knows of such a risk, "the refusal or declination to exercise the authority of his or her office may reflect" the requisite deliberate indifference. *Id.* at 756 (internal quotation omitted); *see also Dobbey v. Mitchell-Lawshea,* 806 F.3d 938, 940 (7th Cir. 2015) ("[A] guard who is

---

[4] This Court accepts the allegations as true on a motion to dismiss despite the fact that on the same date that Defendant Walenda allegedly refused Plaintiff medication, the public record (of which this Court could take judicial notice at another stage of the proceedings) reflects that the U.S. Marshals "provided defendant with the dosage of medications he require[d]." *United States v. Tyner*, No. 18 CR 80-1 (N.D. Ill. Mar. 13, 2018), [21].

8

aware of complaints of pain and does nothing to help a suffering prisoner obtain treatment is likewise exhibiting deliberate indifference."). Indeed, it is the rare case where "it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment." *Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006) (internal quotation omitted).

Plaintiff's allegations fail to sufficiently state a claim for deliberate indifference to Plaintiff's medical needs. As a non-medical professional, Walenda remained justified in relying on the medical expertise of the professionals in determining the amount and dosage of Plaintiff's medication. And while spitting blood is a worrisome symptom, that communication alone is insufficient to show Walenda, a layperson, that Plaintiff was receiving inadequate or inappropriate treatment. As Plaintiff himself alleges, Walenda was aware of Plaintiff's condition, aware he had medication on order, and aware that he was receiving care from medical staff. Walenda thus was justified in his reliance on the medical expertise of those tasked with Plaintiff's care. *See e.g. Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) (noting that "failure to tell the medical staff how to do its job cannot be called deliberate indifference").

Plaintiff also alleges Defendant Walenda told other prisoners about Plaintiff's medical conditions. Allowing such a claim to proceed under *Bivens* would dramatically expand the scope of the law to cover medical privacy issues. Plaintiff has indicated that this is not his intent; he provided these allegations only to illustrate "Walenda's intent behind ignoring" Plaintiff's requests for assistance,

9

rather than as an independent theory of liability. [70] at 3. Accordingly, the Court declines to consider any separate claim based upon the medical privacy allegations.

### B. Claims against the Bureau of Prisons Defendants

#### 1. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) requires exhaustion of available remedies before a prisoner files suit, and the Seventh Circuit requires strict compliance with this exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). With respect to federal inmates, the Bureau of Prisons ("BOP") has promulgated an administrative remedy system, codified in 28 C.F.R. § 542.10, *et seq.*, and BOP Program Statement 1330.18, Administrative Remedy Program. An inmate can seek formal review of a complaint related to any aspect of his imprisonment through this system. 28 C.F.R. § 542.10. To exhaust his remedies, an inmate must first file an informal remedy request through an appropriate institution staff member via a BP-8, prior to filing a formal administrative remedy request with the Warden (BP-9). If the issue is not resolved, the inmate must file an appeal with the Regional Director (BP-10) and then with the General Counsel (BP-11).

The law requires a prisoner only to exhaust all of the *available* administrative remedies. A remedy may be unavailable if: (1) the system operated as a dead end; (2) the process was so opaque that no ordinary prisoner could discern or navigate it rendering it "unknowable"; or (3) prison administrators thwarted inmates from taking advantage of the process through machination, misrepresentation, or intimidation. *Ross v. Blake*, 136 S. Ct. 1850, 1859–60 (2016).

Here, Plaintiff timely filed a BP-8 and a BP-9, both of which received responses on the merits. [65-1] at ¶¶ 8–11. Plaintiff then submitted a BP-10, which was rejected for being too long. *Id.* at ¶ 12. He re-submitted it, but it was again rejected for being late and being too long. *Id.* at ¶13. The response included a note that if he chose to resubmit, he needed staff verification that the untimeliness was not his fault. *Id.* Rather than send a third BP-10, Plaintiff sent a BP-11, which was likewise rejected for untimeliness and for Plaintiff's attempt to skip over the BP-10. *Id.* at ¶ 14.

Plaintiff asserts that the ability to file timely responses was not "available" to him in the true sense of the word. [71] at ¶ 8; *see Ajala v. Tom,* 592 F. App'x 526, 528 (7th Cir. 2015) (noting that if prison officials thwart inmates' attempts to exhaust, "the process that exists on paper becomes unavailable in reality"). He describes a circuitous process by which he received denials through his prison counselor days after they were issued and was then forced to rely on that counselor to pick up and mail his appeals. [71] at ¶¶ 8–9. Although Defendants argue that counselors are not the proper conduits for this mail, at this stage the Court must accept Plaintiff's allegations as true and view the facts in the light most favorable to him. And, based upon the record, a genuine issue of material fact exists as to whether further appeals were really available to the Plaintiff or whether officials like Plaintiff's prison counselor thwarted his ability to exhaust. As a result, the Court finds that neither dismissal nor summary judgment in Defendants' favor is appropriate on the current

11

record. The Court authorizes further discovery and briefing limited to the question of exhaustion and will decide the exhaustion issue on a more complete record.

### 2. Failure to State A Claim Against Defendants Nowakowski and Mohan

Defendants next argue that Plaintiff failed to state a claim upon which relief can be granted with respect to Defendants Nowakowski and Mohan. The Court disagrees.

Because inmates rely upon prison authorities to treat their medical needs, the prison system must meet those needs without causing unnecessary suffering to the prisoners. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). To state a *Bivens* claim for inadequate medical care the plaintiff must satisfy both an objective and subjective component. *Greeno,* 414 F.3d at 652–53. To satisfy the objective component, he must demonstrate that his medical condition is "objectively and sufficiently serious." *Id.* at 652. Both parties agree that HIV and an active syphilis infection are objectively serious conditions for purposes of this analysis.

Satisfying the subjective component is a two-step process: (1) a plaintiff must allege defendants acted "purposefully, knowingly, or perhaps even recklessly," and (2) must allege that defendant's conduct was objectively unreasonable. *McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018). Allegations of negligence, including gross negligence, will not suffice. *Id.*; *see also Greeno,* 414 F.3d at 653. An excessive delay in medical care "can establish deliberate indifference," *Zimmerman v. Prison Health Servs., Inc.*, 36 F. App'x 202, 204 (7th Cir. 2002), but a mere difference of opinion in how an inmate should be treated will not suffice, *see Garvin v. Armstrong*,

12

236 F.3d 896, 898 (7th Cir. 2001); *Norfleet v. Webster,* 439 F.3d 392, 396 (7th Cir. 2006) ("To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.").

In his complaint, Plaintiff alleges a delay in his treatment for syphilis from the time he arrived at the MCC until he met with an infectious disease specialist on October 30, 2018—a period of about two months. During that time, he met with Defendant Nowakowski who told him he would need to see an infectious disease specialist, he received psychiatric care, participated in a sick-call where he was given herpes medication, and received blood tests in preparation for his initial visit with the infectious disease specialist. While he alleges he told Defendant Nowakowski about his active syphilis infection, he also admits that it was not listed on his transfer file. These facts, taken in the light most favorable to Plaintiff, allege at best negligence. Plaintiff does not allege actions by Dr. Nowakowski that were "so far afield" of accepted medical standards as to "raise the inference" her actions were not "based on medical judgment."

Plaintiff's allegations regarding his later treatment are a closer call. Somewhere between the time Plaintiff began treatment of his syphilis in November of 2018 and January of 2019, he alleges he was re-tested for syphilis and Defendant Mohan told him his infection had dissipated and was no longer active. Yet in January, when Plaintiff saw the infectious disease specialist Dr. Yeo again, he found Plaintiff had made "little progress" in the treatment of his syphilis infection, and also

13

recorded issues with HIV and a herpes outbreak. Accordingly, Dr. Yeo recommended that Plaintiff be admitted to the hospital for emergency treatment. Even with these findings and recommendation from Dr. Yeo, the complaint alleges, Defendants Nowakowski and Mohan refused to send Plaintiff to the hospital for about another month. Once he was admitted, he stayed for a full nine days. These facts taken together may be sufficient to demonstrate deliberate indifference on the part of these two defendants with regard to Plaintiff's need for emergency medical care. Defendants Mohan and Nowakowski were both alerted to Plaintiff's need for emergency treatment by Dr. Yeo, but they failed to provide Plaintiff that treatment for about a month. If Defendants were aware of and consciously disregarded Plaintiff's medical need for that period of time, Plaintiff could succeed on his claim (assuming he can satisfy the exhaustion requirement).[5] *See, e.g., Thomas v. Martija*, 991 F.3d 763, 768–69 (7th Cir. 2021) (recognizing, in the eighth amendment context, that "inexplicable delay in treatment which serves no penological interest" can support a finding of deliberate indifference, and that "a physician's delay, even if brief [less than a week], in referring an inmate to a specialist in the face of a known need for specialist treatment may also reflect deliberate indifference.") (citing *Goodloe v. Sood*, 947 F.3d 1026 (7th Cir. 2020); *Petties v. Carter*, 836 F.3d 722, 726 (7th Cir. 2016) (en banc); *Conley v. Birch*, 796 F.3d 742, 749 (7th Cir. 2015)). Accordingly, the Court denies Defendants' motion to dismiss for failure to state a claim as to

---

[5] Plaintiff also alleges that, after he returned from the hospital, he was not provided with the emergency medication he had been prescribed for three days. But Plaintiff does not ascribe this failure to Defendants, and he does not identify the responsible staff members anywhere in his complaint.

14

Defendants Nowakowski and Mohan; if Plaintiff exhausted his administrative remedies, he may proceed on his claim based upon Defendants Nowakowski and Mohan's alleged delay in sending him to the hospital for emergency treatment.

### 3. Failure to State a Claim Against Warden Heisner

Although the Court declines to dismiss Plaintiff's claims against Defendants Nowakowski and Mohan, the Court finds that dismissal is appropriate as to Defendant Heisner because Plaintiff does not allege that Heisner had the requisite amount of personal involvement to be liable under *Bivens*.[6]

As discussed above, mon-medical defendants can generally rely upon the expertise of medical personnel, and thus, only face *Bivens* liability "where they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Arnett*, 658 F.3d at 755. Moreover, in a *Bivens* action, the complaint must contain specific factual allegations of direct, personal involvement by each defendant; *respondeat superior* does not apply. *Id.* at 757. In fact, "supervisory officials are generally shielded from liability where . . . a plaintiff is receiving ongoing care from health care professionals." *Green v. Wexford Health Sources,* No. 12 C 50130, 2013 WL 139883, *11 (N.D. Ill. Jan. 10, 2013).

Plaintiff fails to allege that Defendant Heisner knew anything about his medical care until mid-November, when Plaintiff filed his BP-9 complaint. Defendant

---

[6] Although Plaintiff includes language in his complaint about "policy and procedure," *e.g.*, [59] at ¶ 52, he is not making a *Monell* claim. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). And rightly so. *See Hildreth v. Butler*, 960 F.3d 420, 426–27 (7th Cir. 2020) (explaining that, although it is not impossible for a plaintiff to demonstrate a widespread practice or custom with evidence limited to plaintiff's personal experience, the alleged incidents must be numerous; three incidents in a 19-month period, without more, would fail to qualify).

15

Heisner responded to that complaint with a detailed list of the medical care that Plaintiff had received to that point. Other than this mid-November interaction, Plaintiff repeatedly makes formulaic accusations against Defendant Heisner based upon his supervisory role in promoting rules and regulations, but he does not allege that Heisner had any other personal involvement in Plaintiff's care. In essence, Plaintiff asks the Court to impose liability based upon Defendant Heisner's position in the bureaucratic chain; the law does not permit such an imposition.

### 4. Qualified Immunity[7]

Finally, Defendants argue that the doctrine of qualified immunity entitles them to dismissal. This doctrine protects government officials from liability unless their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

A qualified immunity defense can be raised and evaluated at different stages of the proceedings, including the initial pleading stage. *Hanson v. LeVan*, 967 F.3d 584, 592 (7th Cir. 2020). In reviewing the question of qualified immunity on a motion to dismiss, this Court considers two questions: (1) whether, taken in the light most favorable to Plaintiff, the allegations show that Nowakowski and Mohan violated a constitutional right; and (2) whether that right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Hanson*, 967 F.3d at 592. As previously discussed, Plaintiff has stated a claim for a Fifth Amendment due

---

[7] Having determined that Plaintiff failed to state a claim against Heisner and Walenda, the Court considers qualified immunity as to Defendants Nowakowski and Mohan only.

16

process violation based upon Defendants Nowakowski and Mohan's delaying his hospital visit by a month. With regard to the second question, to be clearly established, the parameters of the right must be clear enough that a reasonable official would understand their conduct was unreasonable. *Hope v. Pelzer*, 536 U.S. 730 (2002).

At the time of Nowakowski and Mohan's actions, the law was clear that deliberate indifference to an inmate's serious medical need, such as intentionally denying or delaying access to medical care or interfering with prescribed treatment, violates the Constitution. *Estelle*, 429 U.S. at 104–05. As a result, the Court declines to dismiss these Defendants on qualified immunity grounds.

## IV. Conclusion

For the reasons explained above, this Court grants Defendant Walenda's motion to dismiss [66] and grants the BOP Defendants' motion to dismiss [64] as to Defendant Heisner. The Court declines to dismiss Plaintiff's claim against Defendants Nowakowski and Mohan for failure to state a claim but converts the motion to dismiss based upon an alleged failure to exhaust to a motion for summary judgment.

The parties shall file a joint status report by October 5, 2021 detailing any discovery each side thinks it needs and proposing a reasonable schedule for supplemental briefing on the question of exhaustion. The parties shall also indicate whether either side believes an evidentiary hearing is required.

Dated: September 23, 2021               Entered:

                                        _____
                                        John Robert Blakey
                                        United States District Judge