IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL LEON TYNER, | ) |
| Plaintiff, | ) No. 19-cv-01502 |
| v. | ) Judge Jeffrey I. Cummings |
| BONNIE NOWAKOWSKI, BRIJ MOHAN, and RACHEL NELSON, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Leon Tyner brings this action under *Bivens v. Six Unknown Agents of Fed'l Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that defendants Bonnie Nowakowski and Brij Mohan (collectively, "BOP Defendants"), employees of the Metropolitan Correction Center of the Federal Bureau of Prisons, and Rachel Nelson, an employee of the Jerome Combs Detention Center, violated his Fourth, Eighth, and Fourteenth Amendment rights. Specifically, plaintiff alleges that defendants failed to provide him with medication and medical attention he needed while in pretrial custody and failed to alert other medical staff of his medical needs. (Dckt. #59 ¶¶45-46).

The BOP Defendants filed a motion for summary judgment, (Dckt. #89), along with the required Rule 56.1 Statement of Undisputed Material Facts, (Dckt. #90 ("DSOF")). Plaintiff responded with an opposing memorandum, (Dckt. #94), his response to defendants' statement of facts and his own statement of material facts, (combined in Dckt. #94-1 ("PSOF")), and his declaration, (Dckt. #94-2).[1] The BOP Defendants thereafter filed their reply, (Dckt. #98), and so

---

[1] The Court, within its discretion, will not strike this document despite the fact that plaintiff combined his statement of additional material facts and his response to defendant's statement of material facts in

1

this motion is ripe for disposition. For the reasons explained below, the Court grants summary judgment in favor of the BOP Defendants.[2]

## I.    LEGAL STANDARD FOR CONSIDERATION OF SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A genuine dispute is present if a reasonable jury could return a verdict for the non-moving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, __F.4th __, 2024 WL 834978, at *2 (7th Cir. Feb. 28, 2024); *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 584 (7th Cir. 2021) (the existence of a factual dispute between the parties will not preclude summary judgment *unless* it is a genuine dispute as to a material fact); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004) (issues of material fact are material if they are outcome determinative).

When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to create factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009). Courts do not weigh the evidence or resolve conflicts in the record in a summary

---

derogation of Local Rule 56.1(b), which requires the filing of a *separate* response to defendant's statement of facts and statement of additional material facts. The Court will cite the paragraph number of the PSOF when referring to plaintiff's response to defendants' statement of material facts and it will cite to the page number of the PSOF (instead of the paragraph number) when referencing plaintiff's statement of additional material facts.

[2] During the pendency of this motion, BOP Defendants filed a motion to dismiss the complaint on the ground that plaintiff's lawsuit impermissibly seeks to extend the Supreme Court's holding in *Bivens* to a new context. (Dckt. #100). In light of the disposition of this motion, the Court need not reach the BOP Defendants' motion to dismiss and it is denied as moot.

judgment proceeding; instead, they review the evidence presented in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *NES Rental Holdings, Inc. v. Steine Cold Storage, Inc.*, 714 F.3d 449, 452 (7th Cir. 2013). Evidence considered on a summary judgment motion "need not be admissible in form, but must be admissible in content, such that, for instance, affidavits may be considered if the substitution of oral testimony for the affidavit statements would make the evidence admissible at trial." *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 420 (7th Cir. 2016).

Summary judgment is only granted if "no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (quotations and citation omitted).

## II.  FACTUAL RECORD

Plaintiff was held at the Metropolitan Correction Center ("MCC") in pre-trial detention between August 28, 2018 and August 19, 2019.[3] PSOF ¶3. The BOP Defendants oversaw the medical care provided to inmates in their capacity as a staff physician (Dr. Bonnie Nowakowski) and the clinical director of the MCC (Brij Mohan). PSOF ¶¶4, 5. Plaintiff complained that although the MCC staff was aware he was HIV positive and tested positive for syphilis during his detention at the MCC, the staff did not properly address these ailments. PSOF ¶¶21, 25. In response, plaintiff engaged the BOP grievance process in pursuit of more efficacious medical care. PSOF ¶¶21-41.

### A.  The BOP's Administrative Grievance Process

The BOP oversees an administrative remedy program through which a prisoner can "seek formal review of an issue relating to any aspect of his/her own confinement" through a multi-

---

[3] Plaintiff has since pled guilty to bank robbery on April 8, 2021 and was ordered to report to the BOP in June 2022 to serve a 30-month period of incarceration. PSOF ¶1.

step grievance process. 28 C.F.R. §542.10(a). First, inmates must submit an informal complaint – known as a BP-8 – to their counselor. 28 C.F.R. §542.13(a). If dissatisfied with the counselor's response, the inmate may then submit a formal written request to the warden – a BP-9 – within twenty calendar days of the date on which the basis for the request occurred. 28 C.F.R. §542.14(a). If dissatisfied with the warden's response, the inmate may submit an appeal—a BP-10—to the appropriate Regional Office within twenty calendar days of the date the warden signed the response and, if dissatisfied with the Regional Office's response, may appeal an adverse response to the BOP's General Counsel—a BP-11—within thirty calendar days of the date the Regional Office signed their response. 28 C.F.R. §542.15(a).

The Regulations outline when such submission deadlines may be extended, including, for example, situations preventing the inmate's submission of such request within the established timeframe which were outside of their control. *See* 28 C.F.R. §§542.14(b), 542.15(a). Inmates receive information about this program through an Inmate Admission and Orientation Handbook, ("Inmate Handbook"), which lays out, among other things, the required administrative steps an inmate must take to properly grieve their complaints. PSOF ¶7.

The BOP keeps and maintains a computer program, SENTRY, "which is an electronic recordkeeping system . . . [which] contains administrative grievances for all BOP inmates." PSOF ¶19.[4] When a BOP inmate submits a formal grievance, their submission receives a unique system entry number for tracking purposes. *See Id*. SENTRY entries track the date the grievance was received, the context of the grievance, the date the grievance was rejected (if applicable), and the reasoning underlying the BOP's decision. PSOF ¶¶ 21, 33.

---

[4] The Court may consider data captured in SENTRY entries on summary judgment. *See, e.g.*, *Rayborn v. Sproul*, Case No. 21-cv-01200-JPG, 2023 WL 4849305, at *3 (S.D.Ill. July 28, 2023); *Scott v. Greene*, Civil No. 3:20CV01904(SALM), 2022 WL 903293, at *9 (D.Conn. Mar. 28, 2022).

### B. Plaintiff Sought Hospitalization to Treat His Conditions

As mentioned above, plaintiff lives with various chronic medical conditions including being HIV positive and, during all times relevant, an active syphilis infection. PSOF ¶25. After his arrest, plaintiff was transferred to the MCC on August 28, 2018. PSOF ¶3. Plaintiff avers that he consistently requested care but never received treatment from the BOP Defendants and instead went to an external specialist in October 2018. (Dckt. #94-2 ¶¶2-5). According to plaintiff, each external specialist he saw for his conditions recommended he be hospitalized, but BOP staff did not follow up on those recommendations. (Dckt. #94-2 ¶5).

### C. Plaintiff Engaged in the BOP Grievance Process

Upon arrival to the MCC on August 28, 2018, plaintiff received a copy of the seventy-page Inmate Handbook. PSOF ¶17. Although plaintiff signed an acknowledgement that he received the handbook on that date, he maintains that he learned of the grievance process by word-of-mouth. PSOF ¶17.

On October 31, 2018, one day after a visit to an external specialist, plaintiff submitted a BP-8 with two attached continuation pages to his Correctional Counselor, Michael Wright. PSOF ¶21. In his BP-8, plaintiff complained that he was not being treated for syphilis. PSOF ¶21. Plaintiff also "requested immediate treatment, placement on home monitoring, and a change in the way attention is provided for STI's, and chronic issues." PSOF ¶21. Plaintiff's request was logged in the SENTRY system. PSOF ¶21.

On about November 5, 2018, plaintiff received the following denial of his BP-8:

> You went to [an] infectious disease specialist on 10/30/2018, the consult report was received and reviewed by the doctor same day. There [were] no recommendations for admission to the hospital on the specialist consult report. The prescription recommended was written, the blood test ordered, and a consult for the requested follow up appointment submitted. You started receiving treatment within 48 hours of returning from the specialist visit.

PSOF ¶22. Unsatisfied with this response, plaintiff requested and received a BP-9 form which he completed on November 15, 2018 and gave to Counselor Wright. PSOF ¶¶23-24.

On January 22, 2019, MCC Warden R.A. Heisner replied to plaintiff's BP-9. PSOF ¶26. Warden Heisner provided a summary of plaintiff's medical care from August 2018 through January 2019, concluded that there was no evidence that the MCC Chicago Health Service staff had not been responsive to plaintiff's medical needs, and informed plaintiff of his right to appeal to the BOP within 20 calendar days of the date of the BP-9 decision. PSOF ¶¶26-27. Plaintiff received Warden Heisner's response and understood that he had 20 days to submit an appeal to the BOP's regional office. PSOF ¶27.

After learning that his BP-9 had been denied, plaintiff requested, received, completed, and submitted a BP-10 form to the BOP North Central Regional Office ("Regional Office"). PSOF ¶28. Although plaintiff does not remember specifics of when and how he submitted his BP-10 form, SENTRY records indicate that the Regional Office received the BP-10 on February 26, 2019. PSOF ¶31. SENTRY records further show that the BOP denied plaintiff's appeal on March 1, 2019 without reaching its merits because plaintiff submitted more than one continuation page with his BP-10 and that plaintiff was advised that he had 10 days of the date of the rejection notice to re-submit his appeal. PSOF ¶32. (Plaintiff disputes the BOP's finding that his BP-10 was longer than one page. PSOF ¶32.)

### D. Plaintiff Filed this Lawsuit

On February 20, 2019, plaintiff completed and signed his initial complaint in this lawsuit, in which he sought as relief: (1) mandated testing of all detainees with chronic diseases for Sexually Transmitted Infections ("STIs"); (2) placement on home confinement with outside doctors; (3) transfer to a medical facility until his criminal case was resolved; and (4) five million

6

dollars in damages. (Dckt. #1 at 13). On February 22, 2019—four days *prior* to the Regional Office's receipt of plaintiff's first BP-10—plaintiff mailed his complaint to this Court. (Dckt. #1-1); PSOF ¶31 (admitting that the Regional Office received his first BP-10 on February 26, 2019). On March 1, 2019, plaintiff's complaint was filed with the court. (Dckt. #1). On that same date (March 1), the Regional Office denied plaintiff's first BP-10. PSOF ¶32.

    **E. Plaintiff Continued to Engage in the BOP's Grievance Process After Filing This Lawsuit**

Plaintiff recalls receiving the Regional Office's notice that it had rejected his first BP-10 and he completed a second BP-10 and submitted to the BOP by mail. PSOF ¶¶33-34. SENTRY records indicate that plaintiff's second BP-10 was received by the Regional Office on March 18, 2019. PSOF ¶35. Although plaintiff believes that this submission was compliant, (Dckt. #94-2 ¶7), SENTRY records indicate that the Regional Office rejected plaintiff's second BP-10 one day later, on March 19, 2019, because it contained "more than one continuation page and because it was untimely." PSOF ¶36. The Regional Office notified plaintiff of the reasons for the rejection and provided him with the opportunity to resubmit his appeal within 10 days of the date of the rejection notice. PSOF ¶36. (Plaintiff disputes the BOP's finding that his second BP-10 was untimely and longer than one page. PSOF ¶36.)

After he received the Regional Office's notice that it had rejected his second BP-10, plaintiff unsuccessfully tried to obtain a third BP-10 from Counselor Wright. PSOF ¶40. Plaintiff thereafter requested, received, and submitted a BP-11 to the Central Office without first remedying the issues with his second BP-10. PSOF ¶41. The Central Office received plaintiff's BP-11 on April 17, 2019, and rejected the BP-11 without a substantive response on May 3, 2019. PSOF ¶41. Plaintiff thereafter submitted no further administrative remedy requests or appeals within the BOP. PSOF ¶42.

### III. DISCUSSION

The BOP Defendants have moved for summary judgment, arguing that plaintiff failed to exhaust his administrative remedies prior to filing suit. In particular, defendants—who bear the burden of proving plaintiff's failure to exhaust[5]—assert that plaintiff "filed his lawsuit prematurely and in the midst of the administrative exhaustion process, which is fatal to his claims." (Dckt. #98 at 1). Plaintiff does not dispute that he failed to complete the BOP's grievance process prior to filing this lawsuit. Instead, plaintiff argues that the BOP effectively eliminated the requirement that he exhaust his administrative remedies by creating "an insurmountable process to file and appeal his grievance." (Dckt. #94 at 4-8). Plaintiff further argues, in the alternative, that the exhaustion requirement was extinguished because he received all the relief he sought through his grievance *before* he filed this lawsuit. (*Id.* at 9-11). For the reasons stated below, the Court agrees with the BOP Defendants that plaintiff failed to exhaust his administrative remedies and otherwise rejects plaintiff's arguments.

**A. It Is Undisputed That Plaintiff Filed this Lawsuit Before He Completed the Process of Exhausting the BOP's Administrative Grievance Process.**

As plaintiff acknowledges, "[t]he Prison Litigation Reform Act (PRLA) requires inmates to exhaust all administrative remedies before filing [a lawsuit] in federal court." (Dckt. #94 at 5) (citing 42 U.S.C. §1997e(a)); *see Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022) (same). Plaintiff further admits that "the Seventh Circuit requires strict compliance with the PLRA's exhaustion requirement, as defined by each jail or institutions regulations." (Dckt. #94 at 5); *Williams v. Rajoli*, 44 F.4th 1041, 1045 (7th Cir. 2022) (same). "Exhaustion requires a prisoner to 'take each of the steps prescribed by the state's administrative rules governing prison

---

[5] *See, e.g.*, *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018) ("it was the officers' burden to show that [plaintiff] did not exhaust available remedies"); *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006) (same).

8

grievances.'" *Williams*, 44 F.4th at 1045, *quoting Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020). Thus, although a prisoner need not exhaust a remedy that is "unavailable," as long as "prison administrators can take *some* action—even if it's not the requested action and even if the prisoner believes that exhaustion will be 'futile'—administrative remedies are available, and the prisoner must exhaust them." *Id.* (internal quotation marks omitted). "The primary justification for requiring prisoners to exhaust administrative remedies is to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Chambers*, 956 F.3d at 983 (emphasis in original) (citing cases).

As discussed above, it is undisputed that: (1) the BOP has a multi-step administrative grievance process which requires a prisoner to submit successive BP-8, BP-9, BP-10, and BP-11 forms to the BOP if they are dissatisfied with the disposition of their grievance; (2) plaintiff proceeded through the initial steps of the grievance process prior to February 22, 2019 by submitting a PB-8 and a PB-9 to his BOP correctional counselor and by mailing a PB-10 to the Regional Office to challenge the denial of his grievance at the earlier steps; (3) on February 22, 2019, plaintiff mailed his complaint to the court; (4) on February 26, 2019, the BOP received plaintiff's BP-10 form; (5) on March 1, 2019, plaintiff's complaint was filed with the court and this lawsuit was initiated; and (6) on March 1, 2019, the BOP denied plaintiff's BP-10. After he filed this lawsuit, plaintiff submitted a second BP-10, attempted to submit a third, and, lastly, submitted a BP-11 form to the BOP.

In sum: plaintiff indisputably filed this lawsuit *before* he had taken each step of the BOP's grievance process.

Where—as here—a plaintiff prematurely files his lawsuit before exhausting his administrative remedies and defendants have raised an exhaustion defense, the Seventh Circuit

9

has made clear that such a lawsuit must be dismissed without prejudice. *See, e.g.*, *Chambers*, 956 F.3d at 984-85; *Fluker v. Cnty. of Kankakee*, 741 F.3d 787, 791-92 (7th Cir. 2013); *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004); *see also Armour v. Mohan*, No. 18-cv-4875, 2020 WL 2098051, at *3 (N.D.Ill. May 1, 2020) (granting judgment as a matter of law to defendants on prematurely filed complaint and concluding that case must be dismissed without prejudice); *Russel v. Cuellar*, 09 C 6749, 2014 WL 1775623, at *3 (N.D.Ill. May 5, 2014) (PLRA suit brought before receiving administrative response must be dismissed without prejudice for failure to exhaust). It matters not that plaintiff continued to pursue the BOP's grievance process *after* he filed his complaint because "a 'sue first, exhaust later' approach is not acceptable." *Chambers*, 956 F.3d at 984.

### B. At the Time Plaintiff Filed His Complaint, It Is Undisputed That the BOP's Grievance Process Was Available to Him.

In an effort to avoid the consequence of prematurely filing his lawsuit prior to completing the BOP's exhaustion process, plaintiff asserts that he was excused from complying with the process because an administrative remedy was "unavailable" to him. *See Crouch*, 27 F.4th 1320 ("While an inmate must first exhaust available remedies, they need not exhaust unavailable ones.") (internal quotation marks omitted). The BOP Defendants have the burden of showing that that an administrative remedy was "available" to plaintiff. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [plaintiff] failed to pursue it.").

It is well-settled that an administrative remedy is still "available" under the PLRA "so long as the administrative authority has the ability to take *some* action in response to the complaint (even if not the requested action)." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)). Put another way, "[a]n 'available'

remedy is one that is 'capable of use for the accomplishment of a purpose' and 'is accessible or may be obtained.'" *Crouch*, 27 F.4th at 1320, *quoting Booth*, 532 U.S. at 737-38 . Conversely, "[a]n administrative remedy is 'unavailable' if it 'operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates,' when the 'administrative scheme' is 'so opaque that it becomes, practically speaking, incapable of use,' or 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.*, *quoting Ross v. Blake*, 578 U.S. 632, 643-44 (2016). The focal point of the inquiry as to whether an administrative remedy is available is the time the plaintiff pursues a remedy in court. *See, e.g.*, *Landis v. Ciolli*, No. 20 CV 50168, 2021 WL 979158, at *9 (N.D.Ill. Mar. 16, 2021).[6]

In this case, the undisputed facts show that the BOP Defendants have carried their burden of showing that the administrative remedy was available to plaintiff at the time he filed his complaint on March 1, 2019. Plaintiff, by his own admission, was well-aware of the BOP grievance process, (Dckt. #94-2, ¶¶6-14), and he appropriately took the first steps to pursue his grievance. In particular, prior to filing his complaint, plaintiff had submitted his request for "informal resolution" (his BP-8) and his "request for administrative remedy" (his BP-9) to the BOP, received responses from the BOP to those requests, and submitted his "regional administrative remedy appeal" (his BP-10) to the Regional Office. Plaintiff was still awaiting the BOP's response to his BP-10 at the time he mailed his complaint to the court on February 22, 2019.

---

[6] In *Landis*, the plaintiff submitted an informal request for an administrative remedy after voicing his concerns to defendants while nearly simultaneously filing suit without giving defendants time to review and respond to his request. The *Landis* court found that plaintiff "filed suit prematurely, *without regard to whether the next step (the formal grievance process) was available to him*." *Id.* (emphasis added).

There is no indication in the record that the BOP's administrative remedy was either a "dead end" or "incapable of use," or that the BOP administrators took any action to thwart plaintiff from taking advantage of the grievance process as of the date plaintiff filed his complaint. To the contrary, plaintiff admits that he received enhanced medical care after submitting his BP-9, (Dckt. #94 at 10), and his post-complaint submission of BP-10 and BP-11 forms belies any notion that he thought it would be futile to proceed with the grievance process. In any event, plaintiff was not entitled to jump the gun and prematurely file this lawsuit simply because he could not control the timing with which the BOP staff mailed his grievance materials or responded to them. (Dckt. #94 at 6-9); *see, e.g.*, *Thrower v. Allen*, No. 17 CV 50340, 2020 WL 7626732, at *3 (N.D.Ill. Dec. 22, 2020); *Salley v. Parker*, No. 18-CV-5700, 2020 WL 4736412, at *9 (N.D.Ill. Aug. 14, 2020). Finally, even if—as plaintiff asserts (Dckt. #94 at 7-8) – the grievance process ran into a dead end after plaintiff submitted his second BP-10 (which the BOP received on March 18, 2019),[7] it would not matter because plaintiff submitted this second BP-10 form *after* he had already prematurely filed his complaint on March 1, 2019. Whether the grievance process arguably became unavailable to plaintiff after he filed this lawsuit is irrelevant. *See Landis*, 2021 WL 979158, at *9.

### C. It Is Undisputed That Plaintiff Had Not Received All of the Relief He Sought in His Grievance at the Time He Filed this Lawsuit.

Finally, plaintiff asserts that his obligation to exhaust his administrative remedies was extinguished because he received all the relief requested in his grievance prior to the time he filed this lawsuit. (Dckt. #94 at 9-10) (citing *Thornton v. Snyder*, 428 F.3d 690, 694-97 (7th Cir. 2005)). However, plaintiff's reliance on *Thorton* is misplaced. In that case, plaintiff filed two

---

[7] Plaintiff asserts that at about this time, the warden refused to provide him with a statement indicating that plaintiff was not the cause of the untimely submission of his grievance materials and his counselor refused to give him a third BP-10 form. (Dckt. #94 at 7-8).

12

grievances seeking to be removed from a dangerous cell and to obtain a clean mattress. Plaintiff was transferred from the cell in question, he received an adequate mattress, and he did not thereafter appeal his grievances to the Director of the Department of Corrections. *Thornton*, 428 F.3d at 694-95. Nonetheless, the Seventh Circuit held that plaintiff had exhausted his available administrative remedies because there was "no possibility of any further relief." *Id.* at 695-96.

The undisputed facts in this case are distinguishable because plaintiff here did *not* receive all the relief he requested in his grievance. In his October 31, 2018 BP-8 grievance form, plaintiff complained that he was not being treated for syphilis and he "requested immediate treatment, placement on home monitoring, and a change in the way attention is provided for STIs and chronic issues." PSOF ¶21. Plaintiff also sought admission to the hospital to treat his conditions. (Dckt. #90-3 at 13). In his response to plaintiff's BP-8, his correctional counselor noted that plaintiff had been treated by an infectious disease specialist and that there was no recommendation for his admission to a hospital. PSOF ¶22. In his November 15, 2018 BP-9 form, plaintiff requested to be sent to a hospital that could "treat all of his" issues and he claimed that the staff was disregarding his medical history and his need for immediate treatment. PSOF ¶¶24-25. In his January 22, 2019 response to plaintiff's BP-9, Warden Heisner denied plaintiff's grievance on the grounds that there was no evidence that the BOP staff had been unresponsive to plaintiff's medical needs and he further noted that plaintiff's condition "did not require a referral or admission into a higher care level facility such as a hospital." PSOF ¶27; (Dckt. #90-3 at 21). Plaintiff submitted a BP-10 form to appeal Warden Heisner's decision and he submitted and filed his complaint in this lawsuit prior to receiving the BOP's response to his appeal.

In sum: unlike in *Thorton,* it is undisputed here that plaintiff had not received all the relief he sought in his grievance prior to filing this lawsuit. He was not admitted to the hospital;

13

he was not placed on home monitoring; and there is no evidence that defendants changed the way they treated detainees with STIs and chronic conditions. The fact that plaintiff continued to seek relief through administrative channels even after he filed this lawsuit makes this clear. After all, why would he continue to appeal to seek further administrative relief if he had already obtained all the relief he sought?[8] By contrast, in *Thorton* and its progeny, the plaintiffs did *not* continue to pursue their administrative remedies after they filed their lawsuits because they had already received all the administrative relief that they could obtain. *See, e.g.*, *Gaines v. Berns*, No. 18-CV-5117, 2022 WL 874660, at *5-6 (N.D.Ill. Mar. 24, 2022) (applying *Thorton* and citing cases where plaintiffs properly exhausted their administrative remedies notwithstanding the fact that they did not pursue the internal appeals process after they had obtained all that they had sought and could obtain no further administrative relief).

Consequently, *Thorton* does not control the disposition of this case and plaintiff has failed to exhaust his administrative remedies. *See, e.g.*, *Mohammad v. Lashbrook*, No. 19-CV-756-RJD, 2022 WL 408112, at *6 (S.D.Ill. Feb. 10, 2022) (distinguishing *Thorton* and noting that "Plaintiff did not receive the relief he requested as he asked to be provided with a pair of boots, and he did not receive the same."); *Gabb v. Tran*, No. 22-CV-86-DWD, 023 WL 8810185, at *3-4 (S.D.Ill. Dec. 20, 2023) (distinguishing *Thorton* and dismissing lawsuit where plaintiff had been promised but not yet provided with all of the relief he sought at the time he filed his lawsuit); *Starks v. Dunlap*, No. 08 C 4901, 2011 WL 3704939, at *5-7 (N.D.Ill. Aug. 23, 2011) (granting defendants' motion for summary judgment where plaintiff had not received the

---

[8] The prayer for relief in plaintiff's complaint (completed and mailed by plaintiff on February 26, 2019) also makes clear that plaintiff had not received all the relief he sought in his grievances at the time he filed this lawsuit. (Dckt. #1 at 13 ("I would like to ensure all detainees with chronic diseases and concerns be offered testing for STIs when they arrive. I want to receive 5 million dollars, and placed on home confinement with access to outside doctors. I also want to be transferred to a Medical Facility until the case is resolved.")).

colostomy reversal surgery he sought at the time he filed suit and thus there were available remedies that could have been requested through the administrative appeals process).

## CONCLUSION

For the above reasons, the motion for summary judgment filed by defendants Nowakowski and Mohan, (Dckt. #89), is granted and the claims against these defendants are dismissed without prejudice. The motion to dismiss filed by defendants Nowakowski and Mohan (Dckt. #100) is denied as moot.

**Date: March 13, 2024**

**Jeffrey I. Cummings**
**United States District Court Judge**